IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAEL SPEIGHTS,

                Plaintiff,

  v.

LESLIE WINSLOW-STANLEY,
DYLON RADTKE, GREG GRAMS and
STACEY GRIMM, in their individual and
official capacities; and GARY HAMBLIN, in
his official capacity,

                Defendants.

ORDER

12-cv-202-slc

---

In this proposed civil action for monetary, declaratory and injunctive relief under 42 U.S.C. §1983, plaintiff Jael Speights, a prisoner at the Wisconsin Secure Program Facility (WSPF), contends that defendants Leslie Winslow-Stanley, Dylon Radtke, Greg Grams, Stacey Grimm and Gary Hamblin violated his rights under the Fifth, Eighth, Thirteenth and Fourteenth Amendments by eliminating his good time credit, extending his mandatory release date and sentencing him to 8 days adjustment segregation and 360 days program segregation based on false evidence, which defendants did not give him the opportunity to contest. Speights has paid the $350 filing fee. All parties have consented to the magistrate judge exercising jurisdiction over this lawsuit. *See* dkts. 3 & 4.

Because Speights is a prisoner, I am required by the 1996 Prison Litigation Reform Act to screen his complaint and dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915A. After reviewing the complaint, I conclude that Speights has failed to state any claim against defendants.

ALLEGATIONS OF FACT

In addressing any pro se litigant's complaint, the court must read the allegations of the complaint generously. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). Documents attached to the complaint may be considered part of the complaint itself. *International Marketing, Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 729 (7th Cir. 1999). In his complaint and attached documents, Speights alleges the following facts.

I. The Parties

During the incident described in his complaint, plaintiff Jael Speights was confined at the Columbia Correctional Institution (CCI) in Portage, Wisconsin. In October 2007, he was transferred to the Wisconsin Secure Program Facility (WSPF) in Boscobel, Wisconsin. Speights remains confined at WSPF in administrative segregation.

At all times relevant to the complaint, defendants Greg Grams, Dylon Radtke, Leslie Winslow-Stanley and Stacey Grimm were employed at CCI. Grams is the warden, Radtke and Winslow-Stanley are captains and Grimm is a sergeant.

Defendant Gary Hamblin is the Secretary of the Wisconsin Department of Corrections.

II. The Disciplinary Proceeding

On May 31, 2007, defendant Grimm issued an incident report, alleging that Speights had solicited her:

> While I, Sgt. Grimm was sitting at the officer's desk, Inmate Speights, was talking to me, then stated "man if I knew I wouldn't go to the hole, I'd do something." I asked him what he was going to do, and he stated "Something along the line of fratenization

(sic)", I then told him to go away to his cell.

Sgt. Grimm also alleged that later that same day, Speights tampered with her drink:

> When I went back to the desk, Inmate Speights was standing there. He had his personal cup with him. I then took a big drink out of the glass that had my Mt. Dew in it and immediately spit it out because it did not taste right. I then dumped it out. The whole time Inmate Speights was in the dayroom. He was the only inmate in the dayroom at this time. Capt. Winslow-Stanley was notified of this incident.

In response to a question on the report asking whether contraband was involved, Grimm checked "no."

On June 14, 2007, following an investigation that included a review of the dayroom's video surveillance tape, defendant Winslow-Stanley issued a conduct report, charging Speights with battery, sexual conduct, lying and soliciting. Winslow-Stanley checked "yes" in response to the question asking whether contraband was involved. She wrote that she believed the substance in Grimm's cup was semen because (1) Grimm saw Speights naked in his cell when she went to retrieve a pen that she had loaned him and (2) Speights had told another officer that immediately before returning to the dayroom that day, he had been masturbating in his cell. Winslow-Stanley did not state that the video surveillance showed Speights using his personal cup to tamper with Grimm's drink or even showed Grimm's drink.

Because defendant Grimm disposed of her cup and its contents, no testing was done. No photographs were taken. According to Speights, Winslow-Stanley relied on false information and fabricated her investigation to support the conduct report.

A disciplinary hearing was conducted on June 29, 2007. The hearing report indicates that Speights admitted making the comment about "fraternization" and admitted to being naked

and masturbating when Grimm approached his cell. He denied pouring anything into Grimm's drink. The disciplinary hearing committee found Speights guilty of battery, sexual conduct and solicitation. It explained that it found the conduct report writer credible because the writer had directly observed Speights's behavior via video surveillance, had conducted an extensive investigation and had no reason to fabricate his findings. Further, Speights's staff advocate had reviewed the video evidence and found nothing exculpatory in it. The committee also noted that Speights's testimony at the hearing was nebulous, self-serving and evasive.

Defendant Radtke was a member of the hearing committee. He refused to view the video surveillance tape and indicated that Speights's written statement was the evidence that he relied on to find Speights guilty of all charges except lying. Speights was punished with 8 days adjustment segregation, 360 days program segregation, loss of good time (178 days) and the extension of his mandatory release date.

In October 2007, Speights was transferred to segregation at WSPF, where he has "no contact" visits in which he must view visitors through glass or via a monitor. Almost every aspect of Speights's life is controlled and monitored. Lights are kept on in Speights's cell 24-hours a day, preventing him from getting an adequate night's sleep. Inmates are not allowed to shield the light. Given the harsh conditions, it is easy for inmates to develop mental problems in segregation.

The results of the 2007 disciplinary hearing have been used against Speights to keep him in administrative confinement at WSPF, will prevent him from receiving clemency and prison employment and will prejudice him in the future.

4

OPINION

Speights contends that defendants violated his right to substantive and procedural due process under the Fifth and Fourteenth Amendments, his right to be free from cruel and unusual punishment under the Eighth Amendment and his right to be free from involuntary servitude under the Thirteenth Amendment when they eliminated his good time credits, extended his mandatory release date and sentenced him to 8 days adjustment segregation and 360 days program segregation based on false evidence that he was not allowed to contest.

**I. Due Process**

The Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property, without due process of law."[1] U.S. Const. amend. XIV, § 1. An allegation of deprivation of due process rights states a claim under both procedural and substantive due process. *Black v. Lane*, 22 F.3d 1395, 1402-03 (7th Cir. 1994); *Kauth v. Hartford Ins. Co.*, 852 F.2d 951, 954 n.4 (7th Cir. 1988).

An important point bears note at the outset: on August 20, 2009, Speights filed a petition for habeas corpus in this court pursuant to 28 U.S.C. § 2254 on the incident that is the subject of this lawsuit. *See Speights v. Huibregtse*, case no. 09-cv-517-bbc. In that petition, Speights similarly asserted that he was denied procedural due process in the context of his prison disciplinary hearing. This court denied the petition, finding that the Wisconsin Court of

---

[1] Although Speights raises claims under both the Fifth and Fourteenth Amendments, it is the Fourteenth Amendment that applies to actions by a state. *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee*, 483 U.S. 522, 543 n. 21 (1987); *United States v. Nagel*, 559 F.3d 756, 759-60 (7th Cir. 2009). The Fifth Amendment applies to the federal government and also contains an equal protection component. *Id.* However, Speights has not alleged an equal protection claim.

Appeals had correctly applied federal law in determining that the prison disciplinary committee decision was supported by sufficient evidence and accompanied by a written statement that adequately explained the committee's decision. In other words, the court determined that the disciplinary hearing met constitutional requirements for due process. *See Wolff v. McDonnell*, 418 U.S. 539, 554 (1974).

Because the loss of good time credits and extension of his mandatory release date affected the duration of his confinement, Speights properly challenged the constitutionality of his disciplinary proceeding under 28 U.S.C. § 2254. *Wolff*, 418 U.S. at 557. However, Speights also was punished with segregation, which can be challenged in a civil action under 28 U.S.C. § 1983. *Id.*; *see also Wilkinson v. Austin*, 545 U.S. 209, 226 (2005) (allowing § 1983 challenge to conditions of confinement where inmate transferred to segregation in a supermax prison); *Lagerstrom v. Kingston* 463 F.3d 621, 624 (7th Cir. 2006) (same). The Court of Appeals for the Seventh Circuit has held that this is true even though good time credits were revoked as a result of the same hearing. *Viens v. Daniels*, 871 F.2d 1328, 1333-34 (7th Cir. 1989). However, the standard for determining what process is due before removing an inmate's good time credits is similar to or more stringent than the standard for reviewing sanctions that result in a change of conditions. As a result, issue preclusion would prevent Speights from again challenging his disciplinary hearing on due process grounds.

When a prisoner loses good time credits, courts have held that a prisoner is entitled to: (1) written notice of the claimed violation at least 24 hours before hearing; (2) an opportunity to call witnesses and present documentary evidence (when consistent with institutional safety) to an impartial decisionmaker; and (3) a written statement by the factfinder of the evidence

relied on and the reasons for the disciplinary action. *Wolff*, 418 U.S. 563-71; *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). In addition, the findings of the disciplinary committee must be "supported by some evidence in the record." *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 456-47 (1985). However, in *Wilkinson*, 545 U.S. at 226, the Supreme Court considered the process a prisoner was due before being transferred to segregation in a "supermax" prison and concluded it was sufficient if the prisoner merely received notice of the reasons for the transfer and an opportunity to rebut those reasons. *Cf. Lagerstrom v. Kingston* 463 F.3d 621, 624 (7th Cir. 2006) (applying *Wolff* in § 1983 action challenging inmate's transfer to supermax). Even though *Wilkinson* raises the question whether Speights had a right to call witnesses, present particular pieces of evidence or even have a hearing in this case, *id.* at 228, under either *Wolff* or *Wilkinson*, Speights fails to state a claim upon which relief may be granted.

As in his habeas corpus petition, Speights alleges that the disciplinary hearing committee relied on insufficient (and false) evidence to find him guilty of violating the prison disciplinary code, and the committee did not create an adequate written report of its decision. With respect to the evidence, he now asserts that Winslow-Stanley incorrectly noted that contraband was involved; the video surveillance tape failed to show him actually tampering with the cup; no testing was performed on the cup or its contents, preventing him from contesting the evidence against him; and Grimm did not receive any medical treatment. He challenges the report on the grounds that it did not state the evidence that the committee relied on and misidentified his inmate number and the number of a conduct code.

As noted in this court's order dismissing Speights's habeas petition, the fact that Speights was the only person seen on the videotape to have been near Grimm's desk while she was away and his having appeared naked before her earlier that day provided more than "some" evidence to support the disciplinary committee's finding that Speights was the person who had tampered with Grimm's drink. Noting that the prison disciplinary committee had testimony, a conduct report and Speights's own statements on which to base its decisions, this court found that the disciplinary committee had sufficient evidence to find Speights guilty pursuant to *Hill*.

The fact that Speights believes the evidence to be false or inadequate is irrelevant. As explained in the order dismissing the habeas petition, to fulfill the minimum requirements of due process, the disciplinary committee is required only to make a determination of credibility and reliability of the conduct report and the staff advocate's report and weigh this evidence against Speights's own testimony. *Culbert v. Young*, 834 F.2d 624, 630-31 (7th Cir. 1987). Not only did this court find that the disciplinary committee met these requirements, but this court also determined that the committee's subsequent written statement appropriately detailed the evidence that it relied on and explained the reasons for the disciplinary action.

Finally, issuing false and unjustified disciplinary charges can amount to a violation of substantive due process if the charges were issued in retaliation for the exercise of a constitutional right. *Black*, 22 F.3d at 1402-03; *see also Lagerstrom*, 463 F.3d at 623. On the other hand, legitimate disciplinary charges do not violate plaintiff's right to substantive due process. "'[E]ven assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process.'" *Lagerstrom*, 463 F.3d at 625 (quoting *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999)). Although

this law may seem unfair to Speights, it derives from the nature of the Due Process Clause, which is directed primarily at improving the accuracy of decisions through fair procedures rather than directly reviewing the evidence. *McPherson*, 188 F.3d at 787. Because Speights has not alleged any retaliation and because his hearing met all relevant procedural standards, he cannot state a substantive due process claim regarding what he considers to be false or trumped up evidence or charges. *See Lagerstrom*, 463 F.3d at 625 (finding same).

## II. Cruel and Unusual Punishment

Speights alleges that the CCI defendants "enforced punishment and placement, where conditions are restrictive and impose atypical and significant hardships." Specifically, he complains that while he is in segregation at WSPF, he is allowed to have only "no contact" visits behind glass or through a television monitor, WSPF monitors all aspects of his life, and it keeps his cell lit 24 hours every day. Speights generally alleges that all of these conditions make it "easy to develop mental problems."

The operative question in Eighth Amendment claims regarding conditions of confinement is whether the defendants were aware of a substantial risk to plaintiffs' health or safety and disregarded that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994). However, a person may not be held liable in a § 1983 action unless he was personally involved in the violation. This means that an official must have participated in the alleged conduct or facilitated it. *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009) ("Liability depends on each defendant's knowledge and actions. . ."). In addition, "[p]ublic

officials do not have a free-floating obligation to put things to rights. . . . Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job." *Id.* at 595.

Even if I were to assume that some of the conditions under which Speights is being confined are extreme enough to pose a significant risk to his health or safety, they were not part of the punishment imposed by the CCI defendants. Speights was sentenced to disciplinary segregation, and it almost goes without saying that the defendants understood that this would result in greater restrictions on Speights. Even so, the defendants did not specify what restrictions were to be placed on Speights and they have no authority or control over the conditions currently imposed on Speights while he is in segregation. Therefore, although some of the conditions that Speights describes may be part of a valid Eighth Amendment conditions-of-confinement claim, any such claim would have to be brought in a separate lawsuit against the prison officials who are actually responsible for directing and imposing those conditions at WSPF.

### IV.  Thirteenth Amendment

The Thirteenth Amendment provides that

> Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

U.S. Const., amend XIII. Speights alleges that defendants violated the Thirteenth Amendment by placing him in disciplinary segregation. This is not involuntary servitude within the meaning of the Thirteenth Amendment. *See Butler v. Perry*, 240 U.S. 328, 332 (1916) ("This Amendment was adopted with reference to conditions existing since the foundation of our Government, and

the term 'involuntary servitude' was intended to cover those forms of compulsory labor akin to African slavery which, in practical operation, would tend to produce like undesirable results.") (citations omitted). Speights has not alleged that he was required to perform any labor. Further, the "Thirteenth Amendment has no application where a person is held to answer for a violation of a penal statute." *Draper v. Rhay*, 315 F.2d 193, 197 (9th Cir. 1964) (citations omitted); *see also United States v. Drefke*, 707 F.2d 978 (8th Cir. 1983) ("Thirteenth Amendment . . . is inapplicable where involuntary servitude is imposed as punishment for crime"). To the extent that Speights is alleging that he was not "duly" found guilty of the disciplinary charge, that claim is subsumed within his due process claim, which is addressed above. *Rolle v. Garcia*, 2007 WL 672679, *8 (N.D.N.Y. Feb. 28, 2007). Accordingly, Speights will not be allowed to proceed on a claim under the Thirteenth Amendment.

### ORDER

IT IS ORDERED that

(1) Plaintiff Jael Speights's complaint is DISMISSED for his failure to state a claim upon which relief may be granted.

(2) A strike will be recorded in accordance with 28 U.S.C. § 1915(g).

(3) The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 18th day of June, 2012.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge